COFFIN, Circuit Judge.
Appellant, Granada Wines, Inc., appeals a bankruptcy court order requiring it to pay appellee, the New England Teamsters & Trucking Industry Pension Fund (Pension Fund), the same percentage of the debt it owes to the Pension Fund as it will pay other unsecured creditors on their claims. The District Court for the District of Massachusetts, 26 B.R. 131 (Bkrtcy.), affirmed the order, rejecting Granada’s statutory construction and policy arguments. We also affirm.
1. Background
This case involves the Employee Retirement Income Security Act of 1974 (ERI- *44 SA), 29 U.S.C. §§ 1001, et seq., as amended by the Multiemployer Pension Plan Amendments Act of 1980 (MPPAA), 29 U.S.C. §§ 1381, et seq., Pub.L. No. 96-364, 94 Stat. 1208 (1980). The MPPAA was designed, in part, to strengthen multiemployer pension plans financially by discouraging employers from withdrawing and leaving a plan with unfunded liabilities. It does so by requiring a withdrawing employer to pay its share of the shortfall; this payment is known as the “withdrawal liability”. Section 4225 of the MPPAA, 29 U.S.C. § 1405, provides two ways of limiting the amount of withdrawal liability depending on whether the employer is withdrawing on account of either a sale, or a liquidation or dissolution. Section 4225(a), which provides a chart of maximum withdrawal liability amounts for the sale of assets, specifically excludes “an employer undergoing reorganization under Title 11”. Section 4225(b), which reduces the allocable withdrawal liability by 50%, covers “an insolvent employer undergoing liquidation or dissolution”, but does not make reference to Chapter 7, the Bankruptcy Code title governing liquidations.
Granada filed a petition for reorganization under Chapter 11 on April 1, 1982. In its Amended Plan for Reorganization, dated October 26, 1982, Granada proposed reducing the Pension Fund’s withdrawal liability claim by one-half of the percentage other unsecured creditors would receive, from 30% of its claim to 15%, representing a difference of $37,292. In so doing, Granada was treating the withdrawal liability claim as if it fell under § 4225(b), although the company had filed for bankruptcy under Chapter 11, the reorganization title, and not Chapter 7, the liquidation title. The Pension Fund objected to the 50% reduction, and the bankruptcy court found in its favor, concluding that § 4225(b) was inapplicable and that the Pension Fund must be treated the same as other general unsecured creditors. The district court reached the same conclusions.
2. Discussion
Granada consistently has made three statutory and policy arguments to support its 50% reduction of the withdrawal liability claim, and each of those will be discussed separately below. For the first time, in its brief to this court, Granada also has challenged the constitutionality of the MPPAA. Although we have allowed constitutional issues to be first raised on appeal in certain circumstances, we conclude that this case does not fall within the narrow exception to the general rule that appellate courts do not consider issues newly raised on appeal. See United States v. Krynicki, 689 F.2d 289 (1st Cir.1982).
a. Applicability of § 4225(b) to certain reorganizations under Chapter 11
Granada argues that Congressional policy, as reflected in the Bankruptcy Code, requires that the Pension Fund’s withdrawal liability claim be treated in this case the same way it would be treated if Granada had filed for bankruptcy under Chapter 7. Granada’s theory is that the Bankruptcy Code prefers reorganizations under Chapter 11 to liquidations under Chapter 7, and that differing treatment of withdrawal liability claims depending on whether the company filed under Chapter 7 or Chapter 11 would, in certain circumstances, provide an incentive for liquidation. The treatment should be identical, Granada claims, when three factors exist: the company is insolvent, other unsecured creditors receive less than full payment under the plan, and shareholders receive nothing.
Granada argues that in those circumstances, a reorganization plan proposing to pay the withdrawal liability claim at the same rate as other unsecured claims would be incapable of confirmation under § 1129(a)(7)(A) of the Bankruptcy Code. Under that section, either all creditors must accept the plan, or each creditor must receive under the plan at least as much as it would receive under a Chapter 7 liquidation. Granada’s contention is that creditors other than the Pension Plan would not accept a reorganization plan because they would get more under liquidation as a re- *45 suit of. the reduced withdrawal liability claim, and that higher payoff also would mean the plan could not succeed under the alternative method or confirmation. Thus, Granada concludes that the bankruptcy and district courts must have erred when they interpreted § 4225(b) to exclude situations like Granada’s.
Assuming arguendo that there is some validity to the contention that the Bankruptcy Code and the MPPAA as construed by the bankruptcy and district courts are at odds, we nevertheless reject Granada’s conclusion that we must interpret § 4225(b) with the concerns of the Bankruptcy Code as our primary guide. Congress evidently drafted the MPPAA with the Bankruptcy Code in mind, since § 4225(a) includes an express reference to Title 11. Thus, the MPPAA must be viewed as Congress’ effort to balance the policies of the Bankruptcy Code with the goal of shoring up multiemployer pension plans, and any inconsistencies should be addressed to Congress, and not the courts.[1] With that view of our task in mind, we find ourselves in agreement with the construction of § 4225 adopted by the bankruptcy and district courts. Since § 4225(b) governs only liquidations, and § 4225(a) governs sales of assets, but excludes Title 11 reorganizations, it appears that Congress equated reorganizations with asset sales, rather tnan liquidations, and decided that that type of asset sale needed no withdrawal liability limitation. Although the statutory drafting leaves open the argument that § 4225(b) could apply to liquidations under either Chapter 7 or Chapter 11, it is clear that Congress intended to exclude reorganizations under Chapter 11 from any coverage under § 4225, no matter what the specific circumstances of the reorganization.
Moreover, Granada provides no evidence to support its claim that full pro-rata payment on the withdrawal liability claim will force certain bankrupt companies to undergo liquidation under Chapter 7 when the better procedure would be reorganization under Chapter 11. The contention that full payment would cause creditors to favor liquidation, and thus to reject a reorganization plan, assumes that there are no compensating benefits to be derived from reorganization, an assumption apparently contrary to Granada’s position that the Bankruptcy Code generally favors reorganizations. The difference between full payment and half-payment, at least in some instances, would seem insufficient to undermine an otherwise preferable decision to file under Chapter 11. In this case, for example, the difference in withdrawal liability is $37,292 while the reorganization was launched with a deposit of more than $1 million.
b. Whether Granada has undergone a liquidation within the meaning and intent of § 4225(b)
Even if § 4225(b) does not generally apply to certain reorganizations under Chapter 11, Granada argues that it nevertheless falls within that section because it has, in fact, liquidated. In support of its contention that § 4225(b) does not cover only Chapter 7 liquidations, Granada cites a Senate Committee Report stating that “[t]o qualify for this rule, an insolvent employer need not undergo a formal liquidation or dissolution. It must, however, be insolvent and wind up its business affairs.” Joint Explanation of S.1076: Multiemployer Pension Plan Amendments Act of 1980, § 5b, 126 Cong.Rec. S.10117, 96th Cong. (2d Sess.) (Daily Ed., July 29, 1980). Granada argues that this language mandates a broad and flexible interpretation of the word “liquidation” while the bankruptcy court and district court opted for “a narrow and formalistic definition of that word.” As evidence of a liquidation, Granada cites its new stock, new management, new premises and a new method of operation which no longer includes salesmen, warehouse- *46 men, truckers or administrative staff. The survival of the name Granada and certain assets of the old company is attributed to the purchase of those assets by another company, Bilmar.
Acknowledging that liquidations can occur within Title 11,[2] we nevertheless find that this was not such a case, and we believe the bankruptcy court summarized well the reasons why:
“The debtor argues that since its post-confirmation operations will be substantially changed in that it will no longer employ its own sales or transportation forces, it has wound up its business affairs. Surely contraction for greater efficiency is a sign of management working for survival not surrender. In fact, during the Chapter 11, the case came very close to being converted to a Chapter 7 liquidation because it was not operating and the losses were increasing due to rent and spoilage of inventory. However, the case remained in Chapter 11 because Granada had considerable value as an operating distributor of wines and other alcoholic beverages as was shown by the eventual confirmation of a plan with a deposit of over $1,000,000. Granada will continue to operate as a wholesale distributor of wines and other alcoholic beverages.”
Thus, wc find that Granada did not liquidate within the meaning of § 4225(b).
c. Whether the Bankruptcy Code’s “cramdown ” provision authorizes a 50% reduction of the Pension Fund’s claim
Section 1129(b)(2)(B)(ii) of the Bankruptcy Code provides for a method of confirming a reorganization plan over the objection of an impaired class of creditors. The provision allows confirmation of a plan if it does not unfairly discriminate against the dissenting impaired class; one aspect of fairness is that the dissenting class must receive no less on its claims than it would receive in a Chapter 7 liquidation. Granada argues that this section, the so-called “cramdown provision”, should permit it to distribute only 15% on the Pension Fund’s claim. It argues that the Pension Fund claim was in a separate class, and that it was justifiable and fair to distinguish the claim. The Pension Fund would be receiving at least as much as it would receive under Chapter 7, since the claim would also be reduced by one-half under that section of the Bankruptcy Code. Thus, Granada says, the plan should be approved despite the Pension Fund’s objection.. We find several problems with this argument.
First, Granada’s reorganization plan did not place the Pension Fund claim in a separate class; it was listed with other general unsecured claims in Class 7 of Granada’s Amended Disclosure Statement. Granada now argues that the withdrawal liability claim should nevertheless be treated as if it were in a separate class because the plan treated it differently by providing for reduced payment on it. Moreover, Granada contends this separate classification was justified because the withdrawal liability claim would be treated differently from other unsecured claims in a Chapter 7 proceeding.
The general rule regarding classification is that “ ‘all creditors of equal rank with claims against the same property should be placed in the same class.’ ” In re Los Angeles Land and Investments, Ltd., 282 F.Supp. 448, 453 (1968), aff'd, 447 F.2d 1366 (9th Cir.1971) (quoting In re Scherk v. Newton, 152 F.2d 747 (10th Cir.1945)). Separate classifications for unsecured creditors are only justified “where the legal character of their claims is such as to accord them a status different from the other unsecured creditors . . . .” Id. at 454. Granada’s argument is that the withdrawal liability claim does not have the same legal *47 character as the other general unsecured claims because it is entitled to a dividend of only 50% in a liquidation under § 4225(b).
We do not believe that this is a sufficient basis for distinguishing the Pension-Fund claim from other general unsecured claims. The limitation of liability under § 4225(b) affects only the allowable amount of the withdrawal claim, not its legal nature. Congress obviously determined that withdrawal liability under a reorganization should be excluded from the statutory reductions, see § 4225(a), and it therefore presumably intended that withdrawal liability should be treated like any other unsecured claim under Chapter 11. Congress’ treatment of liquidation in § 4225(b) should not be used to alter this obvious intent to leave withdrawal liability under reorganization unaffected by the MPPAA.
Since Granada did not and could not separately classify the Pension Fund claim, its attempt to use the cramdown provision to support a 50% reduction in withdrawal liability is inappropriate.

For the foregoing reasons, the judgment of the district court is affirmed.

. We join the bankruptcy court judge in this view. When presented with this argument at a hearing in December 1982, the judge commented: “It seems to me that there is merit to your argument. And it should be addressed to Congress and not the Court.”

. See, e.g., In re Killian Co., 19 B.R. 789, 790 (Bkrtcy.N.D.Iowa 1982) ("Although a debtor in a Chapter 11 proceeding may use the provisions of that chapter to liquidate its assets pursuant to a Court approved plan, the primary purpose of filing a bankruptcy petition under Chapter 11 is to rehabilitate the debtor."); In re Chugiak Boat Works, Inc., 18 B.R. 292, 298 n. 10 (Bkrtcy.D. Alaska 1982).