**In re David W. MURRAY, d/b/a Erin Foods, Debtor.**

**Stewart F. GROSSMAN, Trustee, Plaintiff,**

v.

**NEW ENGLAND TEAMSTERS & TRUCKING INDUSTRY PENSION FUND, Defendant.**

**Bankruptcy No. 89–12251–WCH.**

United States Bankruptcy Court, D. Massachusetts.

June 27, 1994.

---

Randall E. Nash, Grady & Dwyer, Boston, MA, for New England Teamsters and Trucking Industry Pension Fund.

Stewart F. Grossman, Allen H. Forbes, Looney & Grossman, Boston, MA, for trustee.

## DECISION

WILLIAM C. HILLMAN, Bankruptcy Judge.

This matter was submitted for decision on an agreed statement of facts, memoranda, and oral argument. The sole issue before the court is whether the insolvency limitation set forth in 29 U.S.C. § 1405(b) applies in the circumstances of this case.

### Agreed Facts and Conclusions of Law

I adopt the following agreements of the parties as my findings of fact and, to the extent included in this recital, my conclusions of law.

1. The New England Teamsters and Trucking Industry Pension Fund (the "Fund") is a multiemployer pension plan within the meaning of the Employee Retirement Income Security Act of 1974 ("ERISA") and the Multiemployer Pension Plan Amendments Act of 1980 (the "MPPAA").

2. Silver Brothers, Inc. ("Silver Bros.") was an 'employer with an obligation to contribute to the Fund pursuant to a series of collective bargaining agreements with Chauffeurs, Teamsters & Helpers Local Union No.

733, affiliated with the International Brotherhood of Teamsters, AFL–CIO (the "Union").

3. Silver Brothers was a wholesale distributor of beverages, primarily products of Miller Brewing Co. ("Miller") which accounted for 70% of its business.

4. At all relevant times all of the stock of Silver Brothers was owned by Hospitality Holdings Corporation ("HHC"), a holding company which also owned Erin Food Services, Inc. ("Erin Foods"). HHC had no assets other than the stock of Silver Brothers and Erin Foods.

5. At all relevant times, David W. Murray (the "Debtor") was the sole shareholder of HHC and the sole proprietor of Erin Realty Company ("Erin Realty").

6. At all relevant times Silver Bros., HHC, Erin Foods, and Debtor d/b/a Erin Realty were trades or businesses under common control and constituted a "single employer" within the meaning of 29 U.S.C. § 1301(b)(1).

7. The last collective bargaining agreement between Silver Brothers and the Union was effective from April 16, 1985 to April 20, 1988. The parties failed to negotiate a successor agreement.

8. As of April 20, 1988 Silver Brothers ceased to have an obligation to contribute to the Fund. On that date, Silver Brothers was "insolvent" but was not "undergoing liquidation or dissolution" as those terms are used in 29 U.S.C. § 1405(b).

9. Miller terminated its distribution agreement with Silver Brothers on May 13, 1988.

10. Silver Brothers filed suit to enjoin the termination. Injunctive relief was denied by the United States District Court.

11. On June 22, 1988, Silver Brothers filed a petition for relief under Chapter 11 in the United States Bankruptcy Court for the District of New Hampshire. The case was converted to Chapter 7 on March 17, 1989. Victor W. Dahar was appointed trustee on March 24, 1989.

12. On March 28, 1989, creditors filed an involuntary Chapter 11 petition against Erin Foods.

13. On April 6, 1989, an involuntary petition was filed against Debtor.

14. The Fund has asserted a claim against Debtor in the amount of $621,415.00, based upon its calculation of Silver Bros.' withdrawal liability. In determining that amount and in filing its proof of claim in that amount, the Fund did not apply the so-called insolvency 'limitation set forth in 29 U.S.C. § 1405(b).

### *Discussion*

When an employer withdraws from a multiemployer plan, it may be liable to the plan for a "withdrawal liability." 29 U.S.C. § 1381(a). The liability is adjusted by a variety of factors including those "in accordance with section 1405 of this title." 29 U.S.C. § 1381(b)(1)(D).

The controlling provision of § 1405 is 29 U.S.C. § 1405(b), which provides:

"In the case of an insolvent employer undergoing liquidation or dissolution, the unfunded vested benefits allocable to that employer shall not exceed an amount equal to the sum of—

"(1) 50 percent of the unfunded vested benefits allocable to the employer (determined without regard to this section), and

"(2) that portion of 50 percent of the unfunded vested benefits allocable to the employer (as determined under paragraph (1)) which does not exceed the liquidation or dissolution value of the employer determined—

"(A) as of the commencement of liquidation or dissolution, and

"(B) after reducing the liquidation or dissolution value of the employer by the amount determined under paragraph (1)."

The sole issue before me is whether § 1405(b) is applicable on the facts of this case.

### *Who is the "insolvent employer"?*

■ The first step is to consider which entity is involved in the statute. The statute does not provide a definition applicable to § 1405. Defining its meaning for that pur-

pose is up to the courts. *DeBreceni v. Graf Brothers Leasing, Inc.,* 828 F.2d 877, 880 (1st Cir.1987).

The organization which contracted with the Union was Silver Brothers. It is also stipulated that the entire group of entities under common control is a "single employer" as provided by 29 U.S.C. § 1301(b)(1) (passim):

> "For purposes of this subchapter ... all employees of trades or businesses (whether or not incorporated) which are under common control shall be treated as employed by a single employer and all such trades and businesses as a single employer."

The last quoted statute provides no definition directly but merely indicates that groups of organizations which qualify "shall be treated as a single employer." Is the "insolvent employer" described in § 1405(b)(1) the unit which contracted with the Union, or the entire group treated as a single entity, or any member of the group? This issue presents what has been described correctly as "an unharmonious intersection between bankruptcy and pension laws." *Local 478 v. Jayne,* 778 F.Supp. 1289, 1320 (D.N.J.1991).

The Union argues that defining "employer" as Silver Brothers is appropriate. If that were so, the "single employer" concept would be written out of the statute. It would also mean that different members of the group, which the statute directs to be treated as part of the whole, would be afforded different rights, an illogical conclusion at best.

If the entire group is selected, an alternative reading suggested by the Union, it would be a practical impossibility to make the calculations required by § 1405(b)(2) unless all entities which are part of the group were substantively consolidated in a single liquidation or dissolution case. If each entity which is liable for the withdrawal penalty is considered separately, the calculation becomes, if not simple, at least possible in a finite amount of time.

■ Endeavoring to interpret the statute in a manner which "more carefully implements the statute's clear objectives," *Korea Shipping Corp. v. New York Shipping Asso-*

*ciation,* 880 F.2d 1531, 1537 (2d Cir.1989), I find that the "insolvent employer," for the purpose of determining the applicability of § 1405(b) is the entity undergoing liquidation or dissolution against which enforcement of liability is sought, in this case the Debtor. If enforcement is sought against a solvent member of the group, if any there be, § 1405 would not apply. *Local 478, supra,* at 1321.

■ The Union cites *Korea Shipping, supra,* for the proposition that the proper definition is an entity "obliged to contribute to a plan for the benefit of the plan's participants," and hence is only applicable to Silver Brothers. There are two alternative answers to that assertion. First, the *Korea Shipping* court was dealing with 29 U.S.C. § 1381(a) which is not involved in this case, and we know that a word need not be defined in the same way in every provision of a statute. *See, e.g., Dewsnup v. Timm,* —— U.S. ——, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992). Second, all of the members of the group *are* required to contribute to the Fund in the sense that they are liable for the withdrawal liability. *See Carriers Container Council, Inc. v. Mobile Steamship Assoc. Inc.,* 896 F.2d 1330, 1343 (11th Cir.1990).

### The issue of timing

■ The Union argues that both insolvency and "undergoing liquidation or dissolution" must exist as of the date of withdrawal from the plan, and that the 50% limitation only applies if, as of that date, the employer is both. Since it is agreed that no proceedings under Title 11 had been commenced at the date of termination, the Union urges that § 1405 is inapplicable and the full liability remains.

The Trustee takes the position that the operative date is the date when the liability was assessed.[1]

■ I find neither view supported by the statute. The Union contends that "single employer" status is determined as of the date

---

**1.** There is no agreement as to when that occurred.

of withdrawal under the cases,[2] and I agree. However, the issue of liability is distinct from the issue of damages, and I find those decisions to be inapposite.

Section § 1405 becomes operative only in the context of the valuation of the claim of the Fund in liquidation or dissolution proceedings. It is measured upon liquidation or dissolution value "as of the commencement of liquidation or dissolution." 29 U.S.C. § 1405(b)(2)(A). Once insolvency is determined, and the appropriate type of case is commenced,[3] the debtor may claim the benefit of § 1405.

### Conclusion

There is no doubt that Debtor is insolvent and his assets are being liquidated in this proceeding. I find that § 1405 is applicable to the Fund's claim against the Debtor.

**2.** Citing *IUE, AFL–CIO Pension Fund v. Barker & Williamson, Inc.,* 788 F.2d 118, 123 (3d Cir. 1986); *Jasper v. Certified Industries, Inc.,* 658 F.Supp. 332, 334 (E.D.N.Y.1986); *Central States, Southeast & Southwest Areas Pension Fund v. Bay,* 684 F.Supp. 483, 484–485 (E.D.Mich.1988).

**3.** The First Circuit has acknowledged that "liquidations can occur within Title (sic) 11." *Granada Wines, Inc. v. New England Teamsters & Trucking Industry Pension Fund,* 748 F.2d 42, 46 (1st Cir.1984).