In re David W. MURRAY, Debtor.

Stewart F. GROSSMAN,
Trustee, Plaintiff,

v.

Frances MURRAY, Defendant.

Bankruptcy No. 89–12251–WCH.
Adversary No. 93–2002.

United States Bankruptcy Court,
D. Massachusetts.

Sept. 23, 1997.

Richard J. Grahn, Melvin S. Hoffman, Adam J. Ruttenberg, Looney & Grossman LLP, Boston, MA, for trustee.

William S. Gannon, Madleigh, Starr, Peters Dunn & Chiesa, Manchester, NH, for Frances Murray.

## DECISION

WILLIAM C. HILLMAN, Bankruptcy Judge.

### I. Introduction

Stewart F. Grossman ("Grossman"), in his capacity as Trustee of the Murray Creditors' Trust (the "Creditors' Trust")[1] brought this adversary proceeding against Frances Mur-

---

1. The Second Amended Joint Plan of Reorganization Dated November 1, 1991 (the "Joint Plan") was confirmed on December 4, 1991. Under the terms of the Joint Plan, the Creditors' Trust was created and empowered. Grossman was subsequently named as trustee.

ray ("Frances"), wife of the Debtor, David W. Murray ("David") seeking recovery of certain allegedly fraudulent transfers made by or on behalf of David. I held a trial on June 19, 1997. Frances moved for judgment under Fed.R.Civ.P. 52(c) at the close of the plaintiff's evidence. I reserved decision on that motion pursuant to the rule.

The following constitute my findings of fact and conclusions of law pursuant to Fed. R.Civ.P. 52(a), made applicable here by Fed. R. Bankr.P. 7052.

## II. *Background*

David was the subject of an involuntary petition under Chapter 11 filed on April 6, 1989. He consented to the entry of an order for relief on May 16, 1989. Thereafter considerable acrimonious and bitter litigation ensued,[2] including claims made by the Official Creditors' Committee (the "Committee") against Frances and certain assets of which she was the alleged legal or beneficial owner.

### A. *The Stipulation*

On April 30, 1991 David, the Committee, the Connecticut National Bank ("CNB"), Frances (individually and as trustee of Sailfish Realty Trust), and Joseph Williams, an attorney active in the Murrays' legal affairs (in his capacity as trustee of certain trusts, including the Long Point Trust) entered into a Stipulation of Settlement (the "Stipulation").

The Stipulation contains a number of provisions relevant to the current controversy:

. . . .

WHEREAS, the parties to this Agreement wish to propose a mutually agreeable Plan in [David's] Chapter 11 case (the "Plan"), jointly sponsored by [David], the Committee, and CNB, and to resolve all outstanding claims in the Murray case and disputes by and among the parties;

NOW, therefore, in consideration of the mutual covenants herein, the sufficiency of which is acknowledged, and, subject to the

approval of the Bankruptcy Court . . . it is hereby *stipulated* and *agreed* as follows:

. . . .

3. Upon confirmation of the Plan, the Trustee and beneficiaries of the Long Point Trust shall cause to be delivered to the bankruptcy estate of [David] title to the real estate at Long Point, Moultonborough, New Hampshire, currently owned by the Trustee of Long Point Trust, which shall thereafter be transferred to the Creditors' Trust, free and clear or all liens. All non-exempt assets of the Murray estate constituting property of the estate within the meaning of 11 U.S.C. § 541 shall be transferred and assigned to the Creditor's Trust, with the exception of the property specifically listed on the attached Exhibit 1 . . . ("the Schedule"). . . . The assets transferred to the Trust shall include, but not be limited to [certain specified assets, including Long Point]. . . .

4. Approval of this Stipulation and confirmation of the Plan shall effect a compromise of all disputes between the parties to this Stipulation. . . . On the date of confirmation of the Plan, any and all claims by the Committee, CNB, and creditors of [David], shall be waived, extinguished, compromised, and settled, except as they are beneficiaries of the trust, or as otherwise agreed, in consideration of delivery of the property and interests described in Paragraph 3 hereof, and releases shall be exchanged, releasing all claims, rights, or causes of action of the Debtor, Creditors' Committee, and/or other creditors against [various trusts, Frances, and David] that arose on or before the date of confirmation that relate directly or indirectly to all disputes by or between them without limitation, including:

. . . .

(ii) any claims, rights, causes of action of [David] . . . which have arisen or may arise with regard to actions taken by [David] on [sic] any other party to the Settlement

---

**2.** There are almost one thousand documents in the main case file. *See also Grossman v. New England Teamsters & Trucking Industry Pension Fund,* 169 B.R. 263 (Bankr.D.Mass.1994); *Gross-*

*man v.Murray (In re Murray),* 162 B.R. 384 (Bankr.D.Mass.1993); *In re Murray,* 132 B.R. 808 (Bankr.D.Mass.1991).

Agreement ... prior to the petition date through the confirmation date;

The parties shall not release claims relating to the performance of the terms of this Stipulation.

## B. *The Plan*

It is undisputed that numerous assets constituting property of David's estate were transferred to the Creditors' Trust.[3] It is also agreed that, after much legal sparring, good title to the Long Point real estate passed to the Creditors' Trust, and that it subsequently sold the property for over one million dollars. I also find as a fact that certain other property of the estate, not involving the bank accounts hereinafter discussed, was not delivered as required by the Stipulation. The releases were never exchanged.

The Joint Plan, confirmed December 4, 1991, tracked the provisions of the Stipulation as to the assets to be transferred to the Creditors' Trust. It then continued:

6.4 Pursuant to the Stipulation ... dated February 20, 1991[4] ... confirmation of this Plan shall effect a compromise of all outstanding disputes between the parties to the Settlement Agreement.[5] On the date of confirmation any and all Claims by the Committee shall be waived, extinguished, compromised, and settled in consideration of delivery of the property and interests described in Paragraph 6.2 hereof, and releases shall be exchanged, releasing all claims, rights, or causes of action of the Debtor and/or Creditors Committee against ... Frances Murray, that arose on or before the date of confirmation that relate directly or indirectly to all disputes by or between them without limitation, including:

(a) the Committee's asserted claims to ownership of real estate located at Long Point, Moultonborough, New Hampshire, and Sheep's Pond Road, Nantucket, Massachusetts, under any equitable or legal theory.

(b) any claims, rights, causes of action of the Debtor previously asserted or unasserted, formally or informally, with or without demand by the Committee or any other party in interest which have arisen or may arise with regard to actions taken by the debtor on [sic] any other party to the Settlement Agreement[6], or their agents, officers, attorneys or assigns prior to the petition date through the confirmation date.

## C. *This Adversary Proceeding*

Grossman commenced this adversary proceeding on December 2, 1993, alleging that Frances is liable to the Creditors' Trust as the result of fraudulent transfers made by David between January 30, 1989 and April 24, 1989, overlapping the petition date.[7] In summary Grossman contends that funds payable to David by Erin Food Services, Inc. were transferred to Frances during that period, with actual intent to hinder, delay, or defraud David's creditors, for less than rea-

---

**3.** "The Creditors' Committee has investigated the assets and liabilities of [David] Murray and all of the trust entities in which members of his family have an interest. In the course of its investigation, the Committee conducted Rule 2004 examinations of Murray, his spouse, present and former trustees of the Long Point Trust and the Brook Street Realty Trust and the Scott Trust, and obtained documents concerning the affairs of each trust. The Committee believed that litigation over the ownership of assets owned by non-debtors would not be cost effective and the risk of loss and expense of litigation justified a settlement. The Committee, the various third-party trust, and Murray negotiated for months over the terms of the settlement.... The Committee believes that the settlement is in the best interests of the estate, because it will bring into the control of the Creditors Trust not only the Estate's assets worth $3,500,000, but also the Long Point real estate valued at $1,400,000 which is not an asset of the Murray estate" *Second Amended Disclosure Statement* at 16.

**4.** The Stipulation of record is dated April 30, 1991, but no contention is made that the Joint Plan reference is to another document.

**5.** There is no contention that the "Settlement Agreement" is something other than the Stipulation.

**6.** *Ibid.*

**7.** To the extent that any of the transfers were in fact made post-petition, the controlling statute would be 11 U.S.C. § 549, but that does not affect the ultimate decision reached here.

sonably equivalent value while David was insolvent.

## III. Analysis

### A. The Fraudulent Transfer Action: Limitations

 Frances questions whether this proceeding was timely filed. Under 11 U.S.C. § 546(a), as it read at the time this proceeding was commenced, the time limitation was "the earlier of (1) two years after the appointment of a trustee under section 702, 1104, 1302, or 1202 of this title; or (2) the time the case is closed or dismissed." The present action was filed more than two years after the commencement of the case, and it has not yet been closed. No trustee was ever appointed.[8]

There was a significant split of authority as to whether the two year limitation applied in chapter 11 cases where no trustee had ever been appointed. There is no controlling precedent in this circuit.

The weight of authority, supported at the circuit court level by four circuits, is that the limitations period applies to debtors in possession, notwithstanding the explicit language of the statute quoted above. Those courts reason that § 546(a) must be construed in conjunction with the entire Bankruptcy Code, especially § 1107(a).[9] See U.S. Brass & Copper Co. v. Caplan (In re Century Brass Products, Inc.), 22 F.3d 37 (2nd Cir.1994); Construction Management Services, Inc. v. Manufacturers Hanover Trust Co. (In re Coastal Group, Inc.), 13 F.3d 81 (3rd Cir.1994); Upgrade Corp. v. Government Technology Services, Inc. (In re Softwaire Centre Int'l, Inc.), 994 F.2d 682 (9th Cir.1993); Zilkha Energy Co. v. Leighton, 920 F.2d 1520 (10th Cir.1990).

The opposing view—that there is no limitations period applicable to debtors in possession under § 546(a)—has been adopted in the two most recent circuit court opinions. Gleischman Sumner Co. v. King, Weiser, Edelman & Bazar, 69 F.3d 799 (7th Cir. 1995); Maurice Sporting Goods, Inc. v. Maxway Corp. (In re Maxway Corp.), 27 F.3d 980 (4th Cir.1994), cert. denied 513 U.S. 1018, 115 S.Ct. 580, 130 L.Ed.2d 495 (1994). The only two applicable decisions from this district have adopted this position. Salem v. Lawrence Lynch Corp. (In re Farrell & Howard Auctioneers, Inc.), 172 B.R. 712 (Bankr.D.Mass.1994); Saccurato v. Shawmut Bank (In re Mars Stores, Inc.), 150 B.R. 869 (Bankr.D.Mass.1993).

The issue is not free from doubt. Judge Wilkins recognized "that the question presented is difficult and ... legitimate policy arguments exist on both sides," Maxway Corp., 27 F.3d at 984, a sentiment echoed by Judge Easterbrook. Gleischman Sumner Co., 69 F.3d at 800. The 1994 amendment to § 546,[10] which resolves this issue as to matters arising after its effective date, is of no assistance here as the legislative history states that "adoption of this change is not intended to create any negative inference or implication regarding the status of current law or interpretations of section 546(a)(1)." H.R. Report 103–834, 103rd Cong., 2nd Sess. 232 (1994).

---

**8.** Grossman is not the type of trustee to whom the statute refers. Saccurato v. Shawmut Bank (In re Mars Stores, Inc.), 150 B.R. 869, 878 (Bankr.D.Mass.1993).

**9.** Section 1107(a) provides as follows:
(a) Subject to any limitations on a trustee serving in a case under this chapter, and to such limitations or conditions as the court prescribes, a debtor in possession shall have all of the rights, other than the right to compensation under section 330 of this title, and powers, and shall perform all the functions and duties, except the duties specified in sections 1106(a)(2), (3), and (4) of this title, of a trustee serving in a case under this chapter.
11 U.S.C. § 1107(a).

**10.** After amendment, the subsection reads:
"(a) An action or proceeding under section 544, 545, 547, 548, or 553 of this title may not be commenced after the earlier of—
(1) the later of—
(A) 2 years after the entry of the order for relief; or
(B) 1 year after the appointment or election of the first trustee under section 702, 1104, 1163, 1202, or 1302 of this title if such appointment or such election occurs before the expiration of the period specified in subparagraph (A); or
(2) the time the case is closed or dismissed."
11 U.S.C. § 546(a).

On balance, I concur with Judges Queenan and Goodman that under the pre-amendment statute, "there is no bar date for commencement of avoidance actions, other than the date the case is closed, when the debtor serves as debtor in possession." *Farrell & Howard Auctioneers, Inc.,* 172 B.R. at 714–715. I hold that this action, considered as an action to avoid a fraudulent transfer, was timely brought.

### B. *Retention of Jurisdiction*

■ Frances further contends that this Court has not reserved jurisdiction under the Plan to entertain the current proceeding, and as a result the proper venue for actions by Grossman against Frances is in a state court.[11] She points to the language of the Joint Plan addressing retention of jurisdiction.

The Joint Plan provides:

9.1 The Court shall retain jurisdiction for the following purposes:

. . . .

B. To determine any and all disputes arising under the Plan.

. . . .

E. To determine any and all allocations, *adversary proceedings and contested and litigated matters pending in this cases [sic] as at the Confirmation Date;*

F. To enforce and administer the provisions of the Plan and to enforce and administer any order previously entered in this case;

. . . .

H. To correct any defect, cure any omission or reconcile any inconsistency in the Plan or the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan;

I. To determine such other matters as may be provided for in the Order confirming the Plan or as may be authorized under the provisions of the Code;

J. To enforce all orders, judgments, injunction and rulings entered in connection with this case. . . . (emphasis added)

Frances' argument is based primarily on the italicized words. The present adversary proceeding was not pending on December 4, 1991, when the Joint Plan was confirmed.

The Order of Confirmation does not exactly track the retention of jurisdiction provision of the Stipulation. It does, however, provide that jurisdiction is retained "for the purposes provided . . . in the Amended Plan of Reorganization", the reference being, I assume, to the Joint Plan. The Order of Confirmation provides:

b. To enable the Debtor to consummate any and all proceedings which *it may bring prior to entry of this Order of Confirmation* to set aside liens or encumbrances, and *to recover any preferences, transfers,* assets or damages to which it may be entitled under applicable provisions of the Bankruptcy Code or other federal, state or local law;

. . . .

e. To adjudicate all claims or controversies arising out of any purchases, sales or contracts made or undertaken by the Debtor during the pendency of the proceedings;

f. To recover all assets and properties of the Debtor *during the pendency of the proceedings;*

g. To make such orders as are necessary or appropriate to carry out the provisions of the Plan. (Emphasis added).

The extent to which provisions of a plan or order of confirmation can affect a bankruptcy court's post-confirmation jurisdiction has bedeviled the courts for many years. *See generally,* Benjamin Weintraub and Michael J. Crames, Defining *Consummation, Effective Date of Plan of Reorganization and Retention of Postconfirmation Jurisdiction: Suggested Amendments to Bankruptcy Code and Bankruptcy Rules,* 64 Am. Bankr.L.J. 245 (1990).

■ Bankruptcy court jurisdiction is grounded on the grant of that jurisdiction to

---

**11.** Grossman has in fact brought suit against Frances in New Hampshire state court on another matter relating to the Stipulation.

the district courts by 28 U.S.C. § 1334.[12] More particularly, as relevant here, the jurisdiction of this court is grounded in the specific powers granted by 11 U.S.C. § 1142(b):

> (b) The court may direct the debtor and any other necessary party to execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of property dealt with by a confirmed plan, and to perform any other act, including the satisfaction of any lien, that is necessary for the consummation of the plan.

A bankruptcy court also retains post-confirmation jurisdiction to modify a plan,[13] revoke confirmation,[14] or dismiss or convert a case to Chapter 7.[15] Notwithstanding any provision of the Order of Confirmation, "it is well settled that a court cannot retain jurisdiction where none exists." *Gray v. Polar Molecular Corp. (In re Polar Molecular Corp.)*, 195 B.R. 548, 555 (Bankr.D.Mass.1996).

 The Bankruptcy Code, then, sets the outer limits of jurisdiction. I am faced with the opposite side of the question: Can the court and the parties in interest restrict a bankruptcy court's post-confirmation jurisdiction by including narrower retention provisions in the confirmation order? I agree with Judge Queenan that such limitations are effective. 6 James F. Queenan, Jr. et al., *Chapter 11 Theory and Practice § 32.14 (1995)*. That is especially true in the present case, where the language in question was negotiated by the parties in interest, including the predecessor in interest of the present plaintiff and the current defendant. The grant of post-confirmation jurisdiction allows for the exercise of judicial discretion, for the court "may" bring the provisions of the plan to consummation. 11 U.S.C. § 1142(b). *In re Aylesbury Inn, Inc.*, 121 B.R. 675, 678 (Bankr.N.D.N.Y.1990). As Chief Judge Lagueux held in *Zahn v. Ycaipa Capital Fund (In re Almac's, Inc.)*, 202 B.R. 648 (D.R.I. 1996):

> [A]lthough parties may not create jurisdiction by provision in a confirmed plan where it does not otherwise exist, many courts find the retention of jurisdiction to be a prerequisite to the adjudication of a postconfirmation claim in bankruptcy court.

202 B.R. at 656 (citations omitted).

The effect of this interpretation is the equivalent of abstention under 28 U.S.C. § 1334(c)(2), but directed in advance of the issue and with the consent of all of the parties. See Frank R. Kennedy and Gerald K. Smith, *Postconfirmation Issues: The Effects of Confirmation and Postconfirmation Proceedings*, 44 S.C. L.Rev. 621, 642 (1993) (concern about continued supervision or keeping a debtor in "perpetual tutelage" can be solved by the court's abstaining without distorting statutory language and congressional intent).

I find that the emphasized language in the Joint Plan and the Order of Confirmation manifest an intention to reserve jurisdiction over adversary proceedings only to those which had been commenced prior to confirmation. Thus, as an independent action by Grossman against Frances this proceeding cannot be maintained. I hold that my retained jurisdiction is limited by the specific terms of the Stipulation and Order of Confirmation.[16]

### C. The Alleged Breach of Contract

██ This proceeding, however, has another aspect. It also seeks to recover what Grossman perceives to remain due to the

---

12. The section provides, in part, as follows:
(a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.
(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

28 U.S.C. § 1334(a), (b).

13. 11 U.S.C. § 1127.

14. 11 U.S.C. § 1144.

15. 11 U.S.C. § 1112(b).

16. Indeed, I do not find that Grossman has been granted any specific authority to bring fraudulent transfer actions, post-confirmation, in any forum.

Creditors' Trust from Frances under the Stipulation. That claim is appropriately before me as it arises from a pre-confirmation contract. Jurisdiction over such matters is specifically reserved by Paragraph 9e of the Order of Confirmation.

■ Grossman contends that the funds sought to be recovered here should have been turned over to him under the specific terms of the Stipulation. With exceptions not relevant here, it requires that

"All non-exempt assets of the Murray estate constituting property of the estate within the meaning of 11 U.S.C. § 541 shall be transferred and assigned to the Creditor's Trust...." Stipulation, ¶ 3.

The assets which are the subject of this litigation are funds originating (primarily) with checks payable to David and deposited in bank accounts belonging to Frances. At the time the parties executed the Stipulation, no claim had been made or action brought to recover those funds on the basis of a fraudulent transfer or otherwise; they were merely funds which David had transferred to Frances.

■ The definition of "property of the estate" in § 541 includes "any interest in property that the trustee recovers under section 329(b), 363(n), 543, 550, 553, or 723 of this title." 11 U.S.C. § 541(a)(3). That clause does not provide that such property is property of the estate prior to any recovery action.

The first case to consider in this context is *American National Bank v. MortgageAmerica Corp. (In re MortgageAmerica Corp.),* 714 F.2d 1266 (5th Cir.1983). Before the filing of the involuntary petition which instituted the principal case, the plaintiff bank had brought state court fraudulent transfer actions against the corporate principal. It sought to continue those actions after an order for relief under chapter 7 had issued. The issue before the court was whether the asserted fraudulent transfer actions were property of the estate of the corporation and hence could not be continued by the bank. It held that the debtor had sufficient interest in the causes of action to cause them to be protected by the automatic stay as property of the estate:

An action under the Fraudulent Transfers Act is essentially one for property that properly belongs to the debtor and which the debtor has fraudulently transferred in an effort to put it out of the reach of creditors..... The transferee may have colorable title to the property, but the equitable interest—at least as far as the creditors (but not the debtor) are concerned—is considered to remain in the debtor so that creditors may attach or execute judgment upon it was though the debtor had never transferred it. We think that when such a debtor is forced into bankruptcy, it makes the most sense to consider the debtor has continuing to have a "legal or equitable interest[ ]" in the property fraudulently transferred within the meaning of section 541(a)(1) of the Bankruptcy Code.

714 F.2d at 1275.

One commentator makes the key distinction about this case:

Once the petition is filed, any *previously pending* action brought by a creditor under state law to recover fraudulently transferred property for its benefit is stayed pursuant to section 362 of the Code, and the trustee or debtor in possession may avoid the transfer for the benefit of *all* creditors.

5 *Collier on Bankruptcy* (15th ed. rev.) ¶ 548.01[1]n.4 (first emphasis added, second in original).

*MortgageAmerica is* the only authority cited *by Collier* for that limited proposition. It should also be noted that the *MortgageAmerica* court specifically based its decision on § 541(a)(1) and ruled that reference to § 541(a)(3) was unnecessary. 714 F.2d at 1273 n. 7.

I find the reasoning of *MortgageAmerica* unconvincing. A better approach is that taken by Judge Killian in *In re Saunders,* 101 B.R. 303 (Bankr.N.D.Fla.1989). That case also involved a pre-petition fraudulent transfer action, in which a bench decision had actually be entered against the defendants pre-petition. He said:

Our problem with the conclusion reached by the Fifth Circuit lies both in its inconsistency with other provisions of the Bankruptcy Code and in the problems associated with applying that conclusion to other aspects of practice under the Code. First, § 541(a)(3) defines property of the estate as: "[A]ny interest in property that the trustee recovers under section 329(b), 363(n), 543, 550, 553, or 723 of this title." Section 550 allows the trustee to recover fraudulently transferred property for the benefit of the estate to the extent that a transfer is avoided under either §§ 544 or 548; § 541(a)(3) then brings the property actually recovered by the trustee into the estate. If property that has been fraudulently transferred is included in the § 541(a)(1) definition of property of the estate, then § 541(a)(3) is rendered meaningless with respect to property recovered pursuant to fraudulent transfer actions.

We think that the inclusion of property recovered by the trustee pursuant to his avoidance powers in a separate definitional subparagraph clearly reflects the congressional intent that such property is not to be considered property of the estate until it is recovered. Until a judicial determination has been made that the property was, in fact, fraudulently transferred, it is not property of the estate. If it were, the trustee could simply use a turnover action under 11 U.S.C. § 542, and the two (2) year statute of limitations of § 546(a) for actions under §§ 544 and 548 could be avoided. Moreover, allowing the debtor to retain an interest, legal or equitable, in fraudulently transferred property conceivably places a cloud on the title of any property transferred by the debtor until there is a judicial determination that the transfer is not avoidable. This result was clearly not contemplated by Congress.

101 B.R. at 304–305.

To the same effect is *Allnutt v. Friedman (In re Allnutt)*, 1995 WL 222067 (D.Md.1995) (Property that the debtor allegedly fraudulently transferred constitutes property of the debtor's bankruptcy estate only after a judicial determination has been reached).

The *Saunders* reasoning was endorsed and that of *MortgageAmerica* rejected by the Second Circuit in *Federal Deposit Insurance Corp. v. Hirsch (In re Colonial Realty Co.)*, 980 F.2d 125, 131 (1992) .[17] That conclusion is not universally respected, *see In re Swallen's, Inc.*, 205 B.R. 879, 882 (Bankr.S.D.Ohio 1997) and *McGowan v. Ciccone (In re Ciccone)*, 171 B.R. 4, 5 n. 2 (Bankr.D.R.I.1994), but I find *Saunders* a more satisfactory solution. It is particularly compelling where, as here, no affirmative action had been taken to recover the funds at the relevant time.

Based upon the reasoning of *Saunders* I conclude that Frances was under no obligation to transfer the funds at issue as they were not property of David's estate at the time that the Stipulation was executed. She was not in default in her obligations in that regard. As that is the only uncured default laid to her charge in the present proceeding, judgment must enter for the defendant.

**17.** Both *Saunders and Colonial Realty* reach the ultimate conclusion that the pre-petition fraudu- lent transfer actions are stayed under § 362 but that issue is not relevant to the present case.