# United States Court of Appeals
## For the First Circuit

No. 00-1922

STEWART F. GROSSMAN, TRUSTEE OF THE MURRAY CREDITORS' TRUST,

Plaintiff, Appellant,

v.

STEPHEN BERMAN AND AAI FOOD SERVICES DIVISION, INC.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Joseph L. Tauro, U.S. District Judge]
[Hon. William C. Hillman, U.S. Bankruptcy Judge]

Before

Selya, Lynch and Lipez,

Circuit Judges.

Adam J. Ruttenberg, with whom Melvin S. Hoffman, Richard J. Grahn, and Looney & Grossman LLP were on brief, for appellant.
Jay F. Theise, with whom Julie A. Koshgarian and Cherwin, Glickman & Theise LLP were on brief, for appellees.

February 27, 2001

**SELYA, Circuit Judge.** In April of 1989, a petition was filed in the bankruptcy court seeking to reorganize the affairs of David W. Murray. See 11 U.S.C. § 303. The matter dragged on for some two years, at which time the debtor, his wife Frances, and the creditors' representative (the Official Creditors' Committee) entered into a settlement agreement (the Stipulation). The Stipulation provided that the creditors would discharge certain claims and that the debtor, in return, would deliver certain "non-exempt" property to the creditors' nominee. The Stipulation also contained numerous additional provisions, among them a promise that the parties would release all claims inter sese other than "claims relating to the performance of the terms of th[e] Stipulation" and an acknowledgment that, post-confirmation, the bankruptcy court would retain jurisdiction only to determine adversary proceedings pending as of the date of confirmation.

In furtherance of the Stipulation, the parties entered into a plan of reorganization (the Plan) on November 1, 1991. Among other things, it established the Murray Creditors' Trust as successor to the Official Creditors' Committee. The bankruptcy court confirmed the Plan on December 4, 1991, and appointed Stewart F. Grossman as trustee of the Murray Creditors' Trust. The Stipulation, the Plan, and the

-3-

confirmation order contained more or less similar provisions, but often couched them in different language.

The supposed settlement proved more apparent than real. Two years post-confirmation, the trustee brought an action in the bankruptcy court against Frances Murray (an action that we shall call "Grossman I"). This action had two objectives. First, the trustee sought to recover property that the debtor allegedly had transferred fraudulently to his spouse at some point during the pre-petition period (January-April 1989). Second, the trustee sought to recoup funds that Frances Murray allegedly had withheld from the Murray Creditors' Trust notwithstanding a contrary provision in the Stipulation.

The bankruptcy court refused to entertain the first of these initiatives. It determined that the parties had intended to limit the court's jurisdiction over adversary proceedings commenced after confirmation; that such limiting provisions were effective and enforceable; and that, therefore, the fraudulent transfer claim should be dismissed for lack of subject-matter jurisdiction. Grossman v. Murray (In re Murray), 214 B.R. 271, 276-77 (Bankr. D. Mass. 1997). The court accepted jurisdiction over the second claim, but ruled that Frances Murray was under no obligation to transfer the disputed funds to the trustee because those funds were not part of the debtor's estate at the

time the parties executed the Stipulation. Id. at 277-79. The trustee appealed the decision in Grossman I to the district court and lost. He eschewed any further appeal (and, consequently, we take no view as to the soundness of the bankruptcy court's rulings).

Even before Grossman I ran its course, the trustee, on December 6, 1996, filed another action in the bankruptcy court. This time he sued the Murrays and the appellees, Stephen Berman and AAI Food Services Division, Inc. (AAI). We shall call this action "Grossman II."

In Grossman II, the trustee alleged that on December 22, 1993, the Murrays fraudulently deeded their estate in Bedford, New Hampshire, to Berman in a sham transaction and granted a bogus $350,000 mortgage to AAI (a company that Berman controlled). Accordingly, the trustee endeavored to set aside these purportedly fraudulent conveyances. Citing, inter alia, the bankruptcy court's decision in Grossman I, the appellees moved to dismiss Grossman II with prejudice or, in the alternative, for summary judgment.

The bankruptcy court granted the motion for summary judgment with virtually no explanation. The court commented that it had decreed in Grossman I "that Mr. Grossman is exceeding his writ when he brings these actions on matters that

didn't exist at a point in time," and with that cryptic observation entered summary judgment against the trustee. On the trustee's ensuing appeal, the district court issued a one line order affirming the judgment. This appeal followed.

We recognize that the bankruptcy court, with the confirmation of the Plan behind it, was seeking to conclude a decade-old reorganization proceeding fairly and expeditiously. Yet the court's failure to give any cogent explanation of the rationale for its order, coupled with its failure to make any findings (written or oral), places us in an untenable position. The record is inscrutable as to the basis for the grant of summary judgment, and the parties have galloped off in all directions, constructing a myriad of hypothetical scenarios in a vain attempt to explain why the bankruptcy court might have ruled as it did. In the last analysis, these scenarios are pure guesswork — and they raise more questions than they answer.[1]

---

[1]To cite one example, the parties speculate that the basis for the bankruptcy court's decision may have been the court's belief that it lacked subject-matter jurisdiction, and they argue at some length over what they perceive to be a pivotal jurisdictional issue. While theoretically rich, this dialogue appears wholly irrelevant. After all, the bankruptcy court granted summary judgment — a disposition that presupposes the existence of subject-matter jurisdiction. See generally 11 James Wm. Moore et al., Moore's Federal Practice ¶ 56-02 (3d ed. 1999).

We acknowledge that a trial court, on a motion for summary judgment, has no absolute obligation either to make specific findings of fact or to elaborate upon its view of the controlling legal principles. See Fed. R. Civ. P. 52(a) (exempting motions for summary judgment from the usual praxis); Bankr. R. 7052 (applying Fed. R. Civ. P. 52(a) and its exemption for summary judgment motions to bankruptcy litigation); see also Domegan v. Fair, 859 F.2d 1059, 1065-66 (1st Cir. 1988) (refusing to vacate an order denying summary judgment for lack of specific findings). But if our multi-tiered adjudicative system is to function smoothly, a trial court must provide an adequate record for appellate review. For that reason, we repeatedly have emphasized the value of statements explaining the legal basis for a nisi prius court's decision, whether or not required by some rule. E.g., Roque-Rodriguez v. Lema Moya, 926 F.2d 103, 105 n.3 (1st Cir. 1991); Domegan, 859 F.2d at 1066. Although busy trial judges need not write lengthy opinions in every case — a lucid explanation from the bench or a brief memorandum of decision almost always will do — they should take reasonable steps to ensure that the parties and the appellate courts will be able to glimpse the foundation on which their rulings rest.

In many cases, such statements are helpful, but not essential. At times, however, such statements are a necessary precondition to intelligent appellate review. Such an occasion arises when a trial court grants a motion for summary judgment under circumstances in which the basis for its ruling is not easily ascertainable from the bare record. In that kind of situation, it is risky business for an appellate court to guess at what the trial court might have been thinking, and the better course is to remand for an elaboration of the decision.[2] E.g., Francis v. Goodman, 81 F.3d 5, 8 (1st Cir. 1996); Myers v. Gulf Oil Corp., 731 F.2d 281, 283-84 (5th Cir. 1984).

This is such a case. Grossman I had two separate aspects: a fraudulent conveyance claim, 214 B.R. at 275-77, and what the court termed a "breach of contract" claim (evidently referring to a breach of the Stipulation), id. at 277-79. The court decided these claims on different legal grounds. Grossman II can best be described as a hybrid of these double-barreled claims. Thus, the bankruptcy court's allusion to Grossman I does not shed any light on why the court thought that Grossman

_____

[2]We note that the Court of Appeals for the Third Circuit has exercised its inherent supervisory authority to require that trial courts provide an explanation for all orders granting summary judgment. Vadino v. A. Valey Eng'rs, 903 F.2d 253, 258-59 (3d Cir. 1990). We recognize, however, that such explanations are unnecessary in many situations, and we limit our holding accordingly.

II should summarily be put out to pasture. By the same token, the court's elliptical comment that the trustee exceeded his writ does not enhance our ability to discern the basis for its ruling; the court could have been referring to limitations on its own jurisdiction, or to the trustee's standing to bring the action, or to some recondite interpretation of the Stipulation. The parties' confusion, as manifested in their briefs, mirrors our difficulty in attempting to understand this comment — a difficulty that is magnified by the court's decision to grant summary judgment rather than to dismiss the case without prejudice to the trustee's right to pursue it in another forum. See supra note 1. Because the basis for the bankruptcy court's ruling is not ascertainable from the record without extensive surmise, we think that the wisest course is to remand for enlightenment.

We need go no further. The bankruptcy court's enigmatic explanation supplies insufficient guidance for reasoned review. The district court's terse affirmance does not fill the void. Consequently, we vacate the appealed order and remand to the district court with instructions that the matter be remanded to the bankruptcy court for further proceedings consistent with this opinion. The bankruptcy court may, in its discretion, either rehear the matter and enter a new decision or

reinstate its original decision with a suitable explication of its reasoning.

**<u>Vacated and remanded</u>**.  **<u>All parties will bear their own costs</u>**.