**John R. MYERS, Plaintiff-Appellant,**

v.

**GULF OIL CORPORATION,**
**Defendant-Appellee.**

No. 82–2541.

United States Court of Appeals,
Fifth Circuit.

May 7, 1984.

Provost, Umphrey, McPherson & Swearingen, M. Diane Dwight, Port Arthur, Tex., for plaintiff-appellant.

Carolyn J. McKinney, Houston, Tex., Wm. G. Duck, Houston, Tex., for defendant-appellee.

Before BROWN and RANDALL, Circuit Judges, and HUNTER *, District Judge.

JOHN R. BROWN, Circuit Judge:

We deal today not with substance but with form. On appeal is a two-sentence order dismissing an employee's claim for sickness and accident benefits assertedly due him from his employer. Because the enigmatic form of this decision by the District Court prevents us from discerning—and thus reaching—its underlying substance, we vacate the order and remand for an explanation of the dismissal. Nevertheless, the case teaches a lesson: succinctness, no less than beauty, is in the eye of the beholder.

John Myers is a first class boilermaker at the Port Arthur, Texas refinery of the Gulf Oil Corporation. Myers is also a member of the Oil, Chemical and Atomic Workers International Union, which through its local chapter represents many of the workers at the Port Arthur refinery. In January 1979, Gulf and the Union entered into a collective bargaining Contract effective through January 1981. Part of the Contract was a Supplemental Agreement cov-

---

* District Judge of the Western District of Louisiana, sitting by designation.

ering certain welfare benefit plans for the employees, including a Plan for sickness and accident benefits.[1]

In January 1980, the Union went on strike on certain issues, as allowed under a stipulation in the Contract. Initially, Myers participated in the strike, which was to last until May 1980.

On February 5, 1980, Myers was injured when he engaged in a fight on behalf of a fellow striker, identified as Ricky Clark. Clark, who was on the picketline, was either being beaten by or beating on two other men. When Myers jumped in, one of the other men slashed out at him with a knife, seriously cutting Myers' left hand. The treatment and rehabilitation of his hand prevented Myers from returning to work with other workers on May 27, 1980 when the strike ended. Myers returned to his job in March 1981.

Myers did not receive any benefits under the sickness and accident Plan relating to the injury,[2] and sued in federal court to recover them.[3]

Gulf answered and made a motion alternatively to dismiss or for summary judgment. It argued that Myers failed to exhaust his administrative remedy under the Plan (an appeal to the refinery manager), as required by the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001 et seq. He also failed to join the Union, which, Gulf argued, was an indispensable party to the suit. It said that Myers sought an adjudication of the Contract and Supplemental Agreement, which would include an inquiry into the Union's intent in entering into those agreements. Gulf further asserted that the Contract and Supplemental Agreement expressly allowed Gulf to suspend payment of sickness and accident benefits to employees participating in a strike.[4] Moreover, it added, an administrative law judge had upheld such an interpretation in a prior, unrelated proceeding. Finally, Myers' claims were waived, Gulf argued, when the Union agreed at the strike's conclusion to abandon any pending claims, and forego future suits, regarding the strike and the benefit plans under the Contract.

As might be expected, Myers sought to counter each of Gulf's arguments. He claimed that no exhaustion was required because the Plan and his suit were not under ERISA, and, anyway, the remedy under the Plan was wholly inadequate and thus futile. He argued that the Union was not an indispensable party, because the agreements were unambiguous on their face and could be interpreted without looking into the Union's intent. Even if the agreements were ambiguous, he said, joinder not dismissal was the appropriate recourse. He emphasized that Gulf had a

---

**1.** Under the Plan, employees disabled due to sickness or injury would receive full or half pay for a particular number of weeks, varying with the length of their employment.

**2.** It is agreed that Myers could have received about $10,700—$5,100 for the period between his injury and the end of the strike, and $5,600 from that date until the expiration of his eligibility under the Plan.

**3.** Myers also sued Gulf and Saga Food Services (who employed the other men involved in the fight) for damages from his injury. Gulf was severed from the action and found not liable. Saga Food was found liable. Myers was found 50% contributorily negligent. The amount of damages was settled between the parties.

**4.** Article I(6) of the Supplemental Agreement reads:

*No Strikes or Lockouts:*

The Company and the Union agree that there shall be no strikes or lockouts arising out of the provisions of this Supplemental Agreement during the term hereof. [1] *In the event of a strike arising out of any labor dispute, other than one arising out of the provisions of this Supplemental Agreement during the term hereof, there shall be no impairment or abrogation of any employee's rights hereunder;* however, it is understood and agreed that [2] *for the duration of such strike no employer or employee contributions shall be made to any welfare benefit plan for striking employees, and no service credits shall be accrued by such striking employees who are represented by the Union.*

(Emphasis and bracketed numbers added.) Gulf pointed to italicized portion [2] of the clause in support of its interpretation. Gulf further emphasized that the Plan states expressly that it is "voluntary on Gulf's part."

contractual duty to pay the benefits since they were in the nature of accrued benefits for past work.[5] Lastly, Myers characterized the benefits as individual entitlements, which the Union could not waive for its members.

Thereafter, Myers and Gulf agreed to submit the case to the District Court on stipulated facts, on certain evidence introduced at Myers' prior suit, *see supra*, n. 3, and on memorandums of law. They raised essentially the same legal arguments as in their previous discourse over the dismissal/summary judgment motion. In addition, Gulf contended that the Plan was merely a voluntary wage continuation policy funded out of current assets, which did not involve accrued benefits as Myers asserted. Also, it pointed out that injury from fighting was expressly excluded from the Plan. Myers responded that his actions were taken in defense of a fellow striker and thus fell within the "self-defense" exception to the "fighting" exclusion. Again, Gulf moved to dismiss.

At that juncture, the Trial Judge issued its Order:

> Having considered the Defendant's MOTION TO DISMISS OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT, and having reviewed the pleadings, the stipulated facts, and the legal memoranda, the Court is of the opinion that the Motion for Summary Judgment should be GRANTED, because the Plaintiff has failed to state a claim on which relief can be granted.

> The cause is DISMISSED, costs assessed against the Plaintiff.

From those sixty-five words, Myers appeals.

The District Court's order granting summary judgment[6] is pithy to the point of being incomplete. Both parties raised numerous legal and factual arguments which the Order left wholly unanswered: Was the Contract unambiguously clear in allowing Gulf's action? Or, was it ambiguous, so that the Union must be a party to the action? Why then dismissal and not joinder? Did Myers have to exhaust his remedy under the Plan? Were his claims waived by the Union's concession at the conclusion of the strike? Did Myers not act in "self-defense" under the Plan? Did the Plan merely provide continued wages and not accrued benefits for past work?

Gulf tries to support the Trial Judge's decision by rearguing the contentions it made at various points below. It stresses that this Court has held, under F.R.Civ.P. 52(a), that findings of fact and conclusions of law are not necessary in grants of summary judgment, so long as there remain no genuine issues of material fact.[7]

Gulf argues in vain. It has as little inkling of the reasons for the Order of dismissal as have we.

As this Court recently stated

> Although nothing in F.R.Civ.P. 56, governing summary judgment, technically requires a statement of reasons by a trial judge for granting a motion for summary judgment, we have many times emphasized the importance of a detailed discussion by the trial judge.

*Heller v. Namer*, 666 F.2d 905, 911 (5th Cir.1982) (footnote omitted).[8] When we

5. Myers asserted that italicized portion [1] of the clause quoted in note 4, *supra*, supported his interpretation.

6. We presume that such was the intent of the Court's Order.

7. *See Heller v. Namer*, 666 F.2d 905, 911 n. 13 (5th Cir.1982) (collecting cases); *Church of Scientology of Cal. v. Cazares*, 638 F.2d 1272, 1281 (5th Cir.1981); *Hindes v. United States*, 326 F.2d 150, 152 (5th Cir.1964).

8. *See Williamson v. Tucker*, 645 F.2d 404, 410–11 (5th Cir.1981) ("[A]n explanation of the basis of the district court's decision can be invaluable even in cases where Rule 52(a) clearly does not require findings of fact."); *Huckeby v. Frozen Food Express*, 555 F.2d 542, 545 n. 4 (5th Cir. 1977) ("[E]ven when the rules do not require that findings of fact and conclusions of law be issued, a concise statement by the district court of the grounds for its decision is desirable."); *Boazman v. Economics Lab., Inc.*, 537 F.2d 210, 213 n. 5 (5th Cir.1976) (Even though not required for disposition of Rule 56 motions, findings of facts and conclusions of law "are ... permissible and often quite helpful for appellate review."); *see also Cooper v. General Motors*

have no notion of the basis for a district court's decision, because its reasoning is vague or was simply left unsaid, there is little opportunity for effective review.[9] In such cases, we have not hesitated to remand the case for an illumination of the court's analysis through some formal or informal statement of reasons.[10] Clearly, "In all but the simplest case, such a statement [is] not only helpful, but essential." *Jot-Em-Down Store (JEDS) Inc. v. Cotter & Co.*, 651 F.2d 245, 247 (5th Cir.1981).

 Because the District Court gives no indication from which we can accurately predict its basis for granting summary judgment for Gulf, we cannot adequately review its decision. Thus, we vacate the Order and remand for findings and conclusions consistent with this opinion.[11]

VACATED and REMANDED.

---

*Corp.*, 651 F.2d 249, 250 n. 1 (5th Cir.1981); *Jot-Em-Down Store (JEDS) Inc. v. Cotter & Co.*, 651 F.2d 245, 247 (5th Cir.1981); *Church of Scientology of Cal. v. Cazares*, 638 F.2d 1272, 1281 n. 8 (5th Cir.1981); *Farbwerke Hoeschst A.G. v. M/V "DON NICKY"*, 589 F.2d 795, 798 (5th Cir.1979); *Melancon v. Insurance Co. of N. Am.*, 482 F.2d 1057, 1059 n. 4 (5th Cir.1973); *Steed v. Central Ga. Ry. Co.*, 477 F.2d 1303, 1305 (5th Cir.1953); *Mlandinich v. United States*, 371 F.2d 940, 941–42 (5th Cir.1967); *United States ex rel. Industrial Inv. Corp. v. Paul Hardeman, Inc.*, 320 F.2d 115, 116 (5th Cir.1963).

**9.** *Jot-Em-Down Store (JEDS) Inc. v. Cotter & Co.*, 651 F.2d 245, 247 (5th Cir.1981); *Hanson v. Aetna Life & Cas.*, 625 F.2d 573, 575 (5th Cir. 1980); *cf. Carter v. Stanton*, 405 U.S. 669, 671–72, 92 S.Ct. 1232, 1234, 31 L.Ed.2d 569 (1972) (where 3-judge district court's order granting summary judgment was "opaque and unillumi-

nating as to either the relevant facts or the law with respect to the merits" of the claim, order vacated and remanded for clarification).

**10.** *See, e.g., Jot-Em-Down Store (JEDS) Inc. v. Cotter & Co.*, 651 F.2d 245 (5th Cir.1981); *Hanson v. Aetna Life & Cas.*, 625 F.2d 573 (5th Cir.1980); *Granite Auto Leasing Corp. v. Carter Mfg. Co.*, 546 F.2d 654 (5th Cir.1977).

**11.** We emphasize that the statement of reasons need be neither formal nor long; it must only be adequate to facilitate our review. Lastly,

Experience teaches us that we should reiterate that nothing said or unsaid, expressed or implied is a determination, holding or intimation, one way or the other, on the merits of the cause.

*Brazier v. Cherry*, 293 F.2d 401, 409–10 (5th Cir.), *cert. denied*, 368 U.S. 921, 82 S.Ct. 243, 7 L.Ed.2d 136 (1961).