# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 13, 2013

No. 13-30020
Summary Calendar

Lyle W. Cayce
Clerk

ESMA ETIENNE,

Plaintiff–Appellant,

v.

SPANISH LAKE TRUCK & CASINO PLAZA, L.L.C.,

Defendant–Appellee.

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 6:11-CV-213

Before HIGGINBOTHAM, OWEN, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

Plaintiff–Appellant Esma Etienne appeals the district court's grant of summary judgment on her claims that Defendant–Appellee Spanish Lake Truck & Casino Plaza, L.L.C. (Spanish Lake) discriminated against her on the basis of race by failing to promote her and retaliated against her for filing a charge of discrimination with the Equal Employment Opportunity Commission (EEOC). We affirm in part, vacate in part, and remand the case for further proceedings.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-30020

**I**

Esma Etienne, an African-American woman, was employed as a waitress and bartender by Spanish Lake until her termination on November 3, 2009. The sequence of events leading to Etienne's termination took place over a number of months.

In January 2009, a manager at Spanish Lake, Jeannene Johnson, resigned her position, creating a job opening. Rather than notifying Spanish Lake's employees or the public about the open position, the general manager, Bernard Terradot, directly recruited a former Spanish Lake employee who was then employed as a waitress by a competitor to Spanish Lake, Elkie David. David is a Caucasian woman. David had worked as a waitress and bartender during her time at Spanish Lake and, in fact, had received her initial training from Etienne.

After learning of David's hiring, Etienne contacted Terradot on multiple occasions, contending that she should have been given the position rather than David. After several conversations, Terradot told Etienne that she should "suck it up and move on." This prompted Etienne to file her first charge of discrimination with the EEOC, alleging that on January 19, 2009, she was discriminated against and harassed on the basis of her race when Terradot hired David rather than Etienne for the management position. Etienne filed this charge of discrimination on October 15, 2009.[1]

Around the time that David was hired, Terradot issued a new "no visiting–no chatting" policy that barred employees from having conversations longer than five or ten minutes in length while working. Terradot later sent

---

[1] Etienne asserts in numerous places that the charge was filed on April 20, 2009. This assertion is contradicted by the record. The earliest charge of discrimination in the record was filed on October 15, 2009. The only evidence in the record supporting the conclusion that a charge was filed earlier is Terradot's testimony that he "assum[ed] it was the mid to early part of '09" that he received notice from the EEOC that a charge of discrimination had been filed. However, in the same sequence of testimony, Terradot said that he could not recall when he received the letter.

No. 13-30020

follow-up memos to the employees to explain the policy. Etienne repeatedly violated the policy and received both verbal and written warnings, including a July 7, 2009 letter stating that Spanish Lake believed that it had "ample grounds" to terminate Etienne but would give her one "last and final warning," and that Spanish Lake would terminate Etienne immediately upon further violations of the policy. In testimony during an unemployment-compensation proceeding following her termination, Etienne admitted to violating the policy "on a regular basis."

Etienne also had attitude problems following David's hiring. Etienne acknowledged that she and David historically had "friction" and that she "copped a little attitude" when David was hired. Etienne also admitted that she began to have conflicts with Terradot at the same time.

On November 3, 2009, Etienne was terminated by Spanish Lake. Her termination notice stated that she was terminated due to her continued violations of the no visiting–no chatting policy. In response, Etienne filed another charge of discrimination with the EEOC asserting that her termination was in retaliation for her filing the October 2009 charge of discrimination related to her failure to be promoted.

Etienne later filed suit against Spanish Lake in Louisiana state court, asserting numerous state law claims. Spanish Lake removed the suit to federal court, and Etienne amended her complaint to include failure-to-promote and retaliation claims under Title VII of the Civil Rights Act of 1964. Etienne later voluntarily dismissed certain of her state law claims, and the district court granted summary judgment in favor of Spanish Lake on the remainder of Etienne's claims. Etienne now appeals the district court's grant of summary judgment on her failure-to-promote and retaliation claims under Title VII.

No. 13-30020

## II

We review the grant of summary judgment de novo, applying the same standard as the district court.[2]  Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[3]  A genuine dispute of material fact exists when the evidence would permit a reasonable jury to return a verdict in favor of the nonmovant.[4]  When making this determination, we view the evidence in the light most favorable to the nonmovant and draw all reasonable inferences in her favor.[5]

## III

Etienne first appeals the district court's grant of summary judgment with respect to her failure-to-promote claim.  As she did below, Etienne alleges that the record contains both direct and circumstantial evidence of discrimination such that summary judgment should have been denied.[6]  Because the district court provided no explanation for its grant of summary judgment on this claim, we vacate the district court's judgment in part and remand for further proceedings.

Although Federal Rule of Civil Procedure 52(a) does not require a district court to state findings of fact or conclusions of law when ruling on a motion for

---

[2] *Jackson v. Cal–W. Packaging Corp.*, 602 F.3d 374, 377 (5th Cir. 2010).

[3] FED. R. CIV. P. 56(a); *see Jackson*, 602 F.3d at 377.

[4] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[5] *Ramsey v. Henderson*, 286 F.3d 264, 267 (5th Cir. 2002).

[6] This includes an affidavit from Johnson, the manager whose resignation led to David's hiring, in which Johnson states that Terradot told her that Etienne was "too black" to do certain tasks at Spanish Lake as well as that Terradot would not permit African-American employees to handle money.  S*ee Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 991-94 (5th Cir. 2005) (reversing a district court's grant of summary judgment in a race discrimination suit in which similar statements constituted much of the evidence).

summary judgment,[7] a district court should provide some explanation of the basis for its decision to aid appellate review.[8] As this court long ago explained,

> When we have no notion of the basis for a district court's decision, because its reasoning is vague or was simply left unsaid, there is little opportunity for effective review. In such cases, we have not hesitated to remand the case for an illumination of the court's analysis through some formal or informal statement of reasons. Clearly, "[i]n all but the simplest case, such a statement [is] not only helpful, but essential."[9]

The statement need not be formal or long, but it must be adequate to facilitate our review.[10]

The district court failed to provide such a statement in this case. The district court's Judgment of Dismissal with Prejudice granted summary judgment "for oral reasons assigned in Open Court, having determined that there are no genuine issues of material fact in dispute and that said Defendant is now entitled to summary judgment as a matter of applicable law under the facts of the case." Our careful review of the record of the summary judgment hearing, however, reveals that the district court stated no basis for granting summary judgment on Etienne's failure-to-promote claim. Although the parties discussed the failure-to-promote claim during the hearing, when announcing its reasons, the district court addressed only Etienne's separate claim of wrongful termination in retaliation for her filing an EEOC charge.[11]

---

[7] FED. R. CIV. P. 52(a)(3).

[8] *E.g., Myers v. Gulf Oil Corp.*, 731 F.2d 281, 283-84 (5th Cir. 1984).

[9] *Id.* (second alteration in original) (collecting cases and quoting *Jot-Em-Down Store (JEDS) Inc. v. Cotter & Co.*, 651 F.2d 245, 247 (5th Cir. Unit A 1981)).

[10] *Id.* at 284 n.11.

[11] The district court's oral ruling stated, "[t]he fact is she was terminated because she copped an attitude. She was terminated because she didn't like the fact she didn't get the promotion. She was terminated because, during that period of time, she didn't follow the rules by her own admission. By her own admission she didn't follow the rules. I—I'm going to grant

No. 13-30020

Because the district court provided no explanation of or basis for its grant of summary judgment in favor of Spanish Lake on Etienne's failure-to-promote claim, we cannot effectively review its decision. Accordingly, we vacate the district court's judgment with respect to Etienne's failure-to-promote claim and remand for further proceedings consistent with this opinion.

## IV

Etienne next challenges the district court's grant of summary judgment on her retaliation claim, asserting that the record contains both direct and circumstantial evidence of discrimination such that summary judgment should have been denied. The district court appears to have determined that Etienne could not prove that Spanish Lake's proffered nonretaliatory reasons for her termination were pretextual. We agree.

Title VII proscribes discrimination by an employer against an employee because, among other things, the employee "has made a charge, testified, assisted, or participated in an investigation, proceeding, or hearing" under Title VII.[12] A plaintiff's ultimate burden in the retaliation context is to prove that but-for the employer's improper retaliatory motive, the allegedly retaliatory employment action would not have occurred.[13] A plaintiff can discharge this burden by presenting direct evidence of retaliation or by presenting circumstantial evidence of retaliation.[14] "Direct evidence is evidence which, if believed, proves the fact without inference or presumption."[15] "Because direct

---

the summary judgment on behalf of the defense. I'll sign a formal order upon presentation. That's all."

[12] 42 U.S.C. § 2000e-3(a).

[13] *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013).

[14] *See, e.g.*, *Washburn v. Harvey*, 504 F.3d 505, 510 (5th Cir. 2007).

[15] *Brown v. E. Miss. Elec. Power Ass'n*, 989 F.2d 858, 861 (5th Cir. 1993).

evidence is rare, a plaintiff ordinarily uses circumstantial evidence," which is analyzed under the familiar *McDonnell Douglas Corp. v. Green*[16] framework.[17]

Etienne first alleges that she has identified direct evidence of retaliation, pointing to Anna Terradot's testimony that she and Terradot were "mad" that Etienne had filed the EEOC charge when Etienne was terminated. This testimony clearly does not constitute direct evidence of retaliation. Anna Terradot did not testify that her husband told her that he retaliated against Etienne for making the EEOC charge. Direct evidence, as noted, proves the fact *without inference or presumption.* Anna Terradot's testimony, however, has value *only if* one makes an inference—i.e., that Terradot's anger necessarily led him to take a retaliatory action. This testimony does not constitute direct evidence of retaliation.

Accordingly, Etienne may prove her case only by presenting circumstantial evidence and proceeding through the *McDonnell Douglas* burden-shifting framework. Under that framework, the plaintiff must first establish a prima facie case of retaliation, which requires showing "(1) that the plaintiff engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse action."[18] If the plaintiff makes out a prima facie case, the burden of production "then shifts to the employer to articulate a legitimate, . . . nonretaliatory reason for its employment action."[19] If the employer produces such a reason, then the plaintiff "bears the ultimate burden of proving that the

---

[16] 411 U.S. 792 (1973).

[17] *Portis v. First Nat'l Bank of New Albany, Miss.*, 34 F.3d 325, 328 (5th Cir. 1994).

[18] *Banks v. E. Baton Rouge Parish Sch. Bd.*, 320 F.3d 570, 575 (5th Cir. 2003) (quoting *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 471 (5th Cir. 2002)).

[19] *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007).

employer's proffered reason is not true but instead is a pretext for the real . . . retaliatory purpose."[20]

In this case, the parties agree that Etienne can make out a prima facie case of discrimination. Spanish Lake offers two legitimate, nondiscriminatory reasons for Etienne's termination—Etienne's insubordination from the time that David was hired until her termination, and Etienne's repeated violations of Spanish Lake's "no visiting–no chatting policy." Spanish Lake has satisfied its burden of production, and in order to survive summary judgment, Etienne must identify "substantial evidence" indicating that Spanish Lake's proffered reasons are a pretext for retaliation.[21] She has not done so.

Etienne attempts to prove pretext by pointing to two pieces of evidence. First, she points to the administrative law judge's conclusion, in her Louisiana Workforce Commission appeal for unemployment benefits, that a videotape submitted by Spanish Lake in that proceeding did not show Etienne to have violated, on one occasion, Spanish Lake's no visiting–no chatting policy. Second, she again refers to Anna Terradot's testimony that she and Terradot were "mad" that Etienne had filed the EEOC charge when Etienne was terminated.

The administrative law judge's statement from the state unemployment benefits appeal is not evidence in and does not bear on the instant case.[22] That conclusion represents that administrative law judge's evaluation of the evidence before the Louisiana Workforce Commission. The record from that unrelated proceeding—in particular, a videotape submitted by Spanish Lake—is not before

---

[20] *Id.*

[21] *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003).

[22] We also note that if the ALJ's conclusion were relevant in this appeal, then the ALJ's other conclusion—that "the facts fail to validate [Etienne's] assertion that the reason for her separation was due to the complaint she logged with the [EEOC]"—also presumably would be relevant. We doubt that Etienne desires such a result.

No. 13-30020

this court.  Etienne makes no argument that the judge's conclusion bears on this appeal in some alternative manner, such as through the doctrines of res judicata or collateral estoppel.  Finally, to the extent Etienne seeks to use the judge's conclusion to demonstrate that Spanish Lake's belief that Etienne had violated the no visiting–no chatting policy was inaccurate, her argument misses the mark.  The relevant question is not whether an employer's proffered reason was justified but rather "whether [the employer's] perception of [its employee's] performance, accurate or not, was the real reason for her termination."[23]

Anna Terradot's testimony, standing alone, also does not create a genuine issue of material fact with respect to pretext.  In this regard, we reiterate that Etienne's burden is to prove that a retaliatory motive was the but-for cause of, not merely a motivating factor behind, the decision to terminate her.[24]  In this case, although Anna Terradot's testimony that she and her husband were "mad" that Etienne had filed the EEOC charge may suggest that a retaliatory motive was a factor supporting Terradot's decision to terminate Etienne, it does not create a genuine issue of material fact on the question whether but-for Terradot's possible retaliatory motive, Etienne would not have been terminated.[25]  This is particularly true in light of the other undisputed facts in the record, including that Etienne by her own admission had repeatedly violated the no visiting–no chatting policy and "copped a little attitude," as well as that Etienne was repeatedly warned in the months *prior to* her filing of the EEOC charge that her violations risked her continued employment with Spanish Lake.

---

[23] *Laxton*, 333 F.3d at 579. (quoting *Evans v. City of Hous.*, 246 F.3d 344, 355 (5th Cir. 2001)).

[24] *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013).

[25] *Cf. Pennington v. Tex. Dep't of Family & Protective Servs.*, 469 F. App'x 332, 338 (5th Cir. 2012) (holding that the plaintiff's evidence of pretext, which included but was not limited to her supervisor's statement that she "had enough of [the plaintiff] going to [her] supervisor about [her]," was not sufficient to preclude summary judgment).

No. 13-30020

This included a written warning three months before her EEOC charge that Spanish Lake thought it had "ample grounds to terminate [Etienne's] employment" based on her violations of the policy and that "should [Etienne] spend [her] working hours visiting, [she] w[ould] be terminated immediately." On this record, Anna Terradot's testimony does not constitute the type of "substantial evidence" that would preclude the entry of summary judgment. We therefore affirm the district court's grant of summary judgment on Etienne's retaliation claim.

\*     \*     \*

For the foregoing reasons, the judgment of the district court is AFFIRMED in part and VACATED in part, and the case is REMANDED for further proceedings consistent with this opinion.