# Supreme Court of Texas

## No. 22-0558

Scott & White Memorial Hospital d/b/a Baylor Scott & White
McLane Children's Medical Center a/k/a Baylor Scott & White
Health,

*Petitioner*,

v.

Dawn M. Thompson, R.N.,

*Respondent*

On Petition for Review from the
Court of Appeals for the Eighth District of Texas

**Argued October 5, 2023**

JUSTICE BOYD delivered the opinion of the Court.

Various Texas statutes prohibit employers from taking adverse employment actions against employees who engage in certain protected conduct. We have held these statutes impose a "but for" causation requirement, meaning an employer may violate the statute even if the protected conduct is not the sole reason the employer takes the adverse action, but only if the employer would not have taken the action when it did if the employee had not engaged in the protected conduct. In this

case, a nurse who reported concerns of child abuse or neglect to Texas Child Protective Services (CPS) alleges that her employer terminated her in violation of Section 261.110(b) of the Texas Family Code. We hold that, like the similar statutes we have previously addressed, Section 261.110 imposes a but-for causation requirement. We further hold that the summary-judgment evidence in this case conclusively established that the employer would have terminated the nurse when it did even if she had not reported her concerns to CPS. We therefore reverse the court of appeals' judgment and reinstate the trial court's summary judgment in the employer's favor.

## I.
## Background

Dawn Thompson worked as a registered nurse at Scott & White Memorial Hospital. In 2015, she received two written reprimands for violating Scott & White's personal-conduct policy. In May, after she raised her voice and used profanity during an argument with a coworker, she was cited for unprofessional and disrespectful conduct and warned that any future violation may result in corrective action up to and including termination. In October, after several additional "disruptive" incidents culminated in "argumentative and disrespectful" conduct towards a physician, she was cited and warned that any future violation "will result in separation from employment." Thompson testified that, although she disagreed that she should have received the second reprimand, she understood that a third violation would result in termination.

2

The third and final incident occurred in May 2016. Thompson learned that the divorced parents of a child patient were each having the child treated by a different neurologist, and she became concerned the parents were not properly managing the child's medications. Without discussing her concerns with the parents, Thompson called the child's school nurse and engaged in a conversation in which she disclosed the child's protected health information. Although the parents had previously signed a form authorizing the hospital to disclose such information under limited circumstances, the authorization expired a month earlier. After the school nurse advised her that the child's "behavior issues" had increased, Thompson spoke to a supervisor who told her to report her concerns to CPS, which she did. The child's mother learned of the CPS report and complained to the hospital. After the hospital's subsequent investigation revealed Thompson's calls and disclosures to the school nurse, it terminated Thompson's employment.

Thompson sued Scott & White for violating Family Code Section 261.110(b).[1] Scott & White moved for summary judgment, arguing it terminated Thompson for committing a third violation of the personal-conduct policy by disclosing the child's protected health information to

---

[1] Thompson also asserted claims under the Texas Health & Safety Code and the Texas Occupations Code. *See* TEX. HEALTH & SAFETY CODE § 161.134 (prohibiting hospitals from terminating an employee for reporting a violation of law); TEX. OCC. CODE §§ 301.4025 (prohibiting a nurse's employer from terminating a nurse who reports a failure of care causing substantial risk to a patient), .413 (prohibiting retaliation against a nurse who makes a report under Section 301.4025). After the trial court granted summary judgment for Scott & White on all of Thompson's claims, she filed a motion for new trial only on the claim under Section 261.110(b). The court of appeals affirmed the summary judgment on the other claims, and they are not now before us.

the school nurse and it would have terminated her for that reason even if she had not made the report to CPS. The trial court granted summary judgment in Scott & White's favor, but the court of appeals reversed. 659 S.W.3d 83 (Tex. App.—El Paso 2022). We granted Scott & White's petition for review.

## II.
## Family Code Section 261.110

The Texas Family Code promotes "a strong policy to protect children from abuse by requiring 'a person having cause to believe that a child's physical or mental health or welfare has been or may be adversely affected by abuse or neglect by any person' to 'immediately make a report' to the proper authorities." *Golden Spread Council, Inc. No. 562 of Boy Scouts of Am. v. Akins*, 926 S.W.2d 287, 291 (Tex. 1996) (quoting TEX. FAM. CODE § 261.101(a)). A "professional" who works with children[2] and "has reasonable cause to believe that a child has been abused or neglected or may be abused or neglected" has a nondelegable duty to report that concern within forty-eight hours. TEX. FAM.

---

[2] The statute defines "Professional" to mean

an individual who is licensed or certified by the state or who is an employee of a facility licensed, certified, or operated by the state and who, in the normal course of official duties or duties for which a license or certification is required, has direct contact with children. The term includes teachers, nurses, doctors, day-care employees, employees of a clinic or health care facility that provides reproductive services, juvenile probation officers, and juvenile detention or correctional officers.

TEX. FAM. CODE § 261.101(b); *see id.* § 261.110(a)(2) (giving the term "the meaning assigned by Section 261.101(b)").

4

CODE § 261.101(b). To encourage such reports by protecting those who make them, Section 261.110 prohibits an employer from taking any adverse employment action against "a person who is a professional and who [makes the report] in good faith." *Id.* § 261.110(b).[3]

A professional who believes she has been retaliated against in violation of Section 261.110(b) may sue her employer for injunctive relief or damages or both. *Id.* § 261.110(c). The professional bears the burden of proving the claim, "except that there is a rebuttable presumption that the plaintiff's employment was . . . terminated . . . for reporting abuse or neglect if the . . . termination . . . occurs before the 61st day after the date on which the person made a report in good faith." *Id.* § 261.110(i).[4] As an "affirmative defense," the employer may establish that it "would have taken the action against the employee that forms the basis of the

---

[3] The statute also protects a professional who "initiates or cooperates with an investigation or proceeding by a governmental entity relating to an allegation of child abuse or neglect." TEX. FAM. CODE § 261.110(b). Thompson has not argued that this prong applies to her.

[4] The parties agree that this rebuttable presumption applies under these facts because Scott & White terminated Thompson's employment less than sixty days after she made the child-abuse report to CPS. But on summary judgment, Thompson cannot rely on the presumption to create a fact issue and shift the burden to Scott & White to negate the presumption. *See Chavez v. Kan. City S. Ry. Co.*, 520 S.W.3d 898, 900 (Tex. 2017). The presumption, in other words, "does not shift the burden of proof and stands only in the absence of evidence to the contrary." *City of Fort Worth v. Johnson*, 105 S.W.3d 154, 163 (Tex. App.—Waco 2003, no pet.) (citing *Tex. Nat. Res. Conservation Comm'n v. McDill*, 914 S.W.2d 718, 723 (Tex. App.—Austin 1996, no writ)) (discussing the Texas Whistleblower Act). Once Scott & White produced evidence that it did not terminate Thompson's employment for reporting abuse or neglect, the analysis "proceeds as if no presumption ever existed." *Id.*

suit based solely on information, observation, or evidence that is not related to the fact that the employee reported child abuse or neglect." *Id.* § 261.110(k).[5]

The statute does not explicitly describe the standard of causation a plaintiff must prove to establish a violation. It does provide some guidance, however, by prohibiting adverse actions against a professional "who" files a report in good faith, creating a presumption that the adverse action was taken "for" filing the report, and providing a defense when the employer would have taken the action "based on" conduct other than the report. *Id.* § 261.110.

Construing similar statutes that provide similar protections using similar language, we have consistently held that, for a violation to occur, the protected conduct "need not be the employer's sole motivation" for the adverse action "but it must be such that without" the protected conduct the adverse action "would not have occurred when it did." *Tex. Dep't of Hum. Servs. v. Hinds*, 904 S.W.2d 629, 631, 633 (Tex. 1995) (construing the Texas Whistleblower Act, which prohibits adverse actions against an employee "who in good faith reports a violation of law" and establishes a presumption that the action was "because the

---

[5] Although Scott & White contends that the evidence conclusively established that it would have terminated Thompson for disclosing protected health information even if she had not made the report to CPS, it did not rely on this affirmative defense and instead argued that these facts prevented Thompson from bearing her burden of establishing that Scott & White terminated her "for" making the report. Thompson has not argued that Scott & White can raise this argument only by relying on the statutory affirmative defense, and neither party addresses the relationship between the causation standard and the affirmative defense. We thus decline to consider or address that issue in deciding this case.

6

employee made the report").[6] Under this causation standard, the evidence must establish that the employer would not have taken the adverse action "but for" the professional's protected conduct, meaning no violation occurs if the employer would have taken the adverse action when it did even if the employee had not engaged in the protected conduct. *Id.* at 631.

Consistent with these decisions, we hold—and the parties appear to agree—that Section 261.110 also requires a but-for causal connection between the employee's protected conduct and the adverse employment action. Applying this standard, Thompson contends that Scott & White terminated her employment, at least in part, because she reported her child-abuse concerns to CPS. Scott & White, however, contends that it fired Thompson because she violated the personal-conduct policy a third time by disclosing the child's protected health information to the school nurse[7] and it would have terminated her when it did for that reason

---

[6] *See also Apache Corp. v. Davis*, 627 S.W.3d 324, 339 (Tex. 2021) (construing Texas Labor Code Section 21.055, which prohibits employers from retaliating against a person "who" opposes a discriminatory practice); *Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 451 (Tex. 1996) (construing Texas Labor Code Section 451.001, which prohibits discrimination against an employee "because" the employee filed a workers' compensation claim).

[7] Thompson's supervisor concluded the disclosure violated "HIPAA," the federal Health Insurance Portability and Accountability Act of 1996, Pub. L. No. 104–191, § 262, 110 Stat. 1936, 2021–31 (codified as amended at 42 U.S.C. §§ 1320d to 1320d–8 (2006)). The "privacy rules" enacted under HIPAA's authority generally "prohibit the disclosure of protected health information except in specified circumstances." *In re Collins*, 286 S.W.3d 911, 917 (Tex. 2009). "A person who discloses protected health information in violation of the privacy rule is subject to a fine of up to $50,000, and imprisonment of no more than a year, or both." *Id.* (citing 42 U.S.C. § 1320d–6 (2006)). We have received an informative amicus brief from the Texas Nurses Association and the Texas

even if she had not made the report to CPS. Because the trial court dismissed Thompson's claim on summary judgment, she argues that the summary-judgment evidence creates a fact issue on Scott & White's reasons for terminating her employment and thus fails to conclusively establish that Scott & White did not terminate her for making the CPS report.

## III.
## Summary-Judgment Evidence

Because Scott & White moved for traditional summary judgment, it bore the burden to negate at least one element of Thompson's claim. *See* TEX. R. CIV. P. 166a(c); *Little v. Tex. Dep't of Crim. Just.*, 148 S.W.3d 374, 381 (Tex. 2004) (citing *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995)). The only element the parties dispute is causation. Scott & White contends it negated that element by demonstrating a legitimate basis for terminating Thompson: her third violation of the personal-conduct policy by releasing protected health information to the school nurse. According to Scott & White, whether the CPS report was a possible "additional reason" for her termination is

---

School Nurses Organization contending Thompson's disclosure in fact did not violate HIPAA. But the question before us is whether the evidence conclusively establishes that Scott & White would have terminated Thompson when it did for disclosing information to the school nurse even if Thompson had not made the report to CPS. Whether Thompson's disclosure was in fact legal or illegal is irrelevant to that question, and we pass no judgment on the issue. *See Etienne v. Spanish Lake Truck & Casino Plaza, L.L.C.*, 547 F. App'x 484, 490 (5th Cir. 2013) ("The relevant question is not whether an employer's proffered reason was justified but rather 'whether [the employer's] perception of [its employee's] performance, accurate or not, was the real reason for her termination.'" (quoting *Laxton v. Gap Inc.*, 333 F.3d 572, 579 (5th Cir. 2003))).

irrelevant because it would have fired Thompson at that time regardless of whether she made the CPS report.

In response, Thompson argues that she created a fact issue by providing evidence that Scott & White terminated her, at least in part, because of her CPS report. In support, she relies on just one piece of evidence: the Employee Counseling Form that Scott & White completed and provided to her when she was terminated. This document states that Thompson's employment is being terminated, describes the "Primary Nature" of the "Issue" that led to termination as a "Policy Violation," and describes the "Secondary Nature" of the "Issue" as "Performance." Then, under a section labeled "Describe the Incident or Issue," the document states:

> On 5/10/2016, [Scott & White] received complaint of Dawn M[.] Thompson inappropriately contacting a school nurse to discuss a patient without a signed release of information from the parent. This is a violation of HIPAA and patients['] rights. As a result of this violation your employment is being terminated immediately.

In the next section, labeled "Expectations," the document states:

> An Audit revealed that the above named nurse contacted a school nurse without a [Release of Information]. Furthermore a CPS referral was made without all details known to Ms. Thompson. It is a violation of a patient's rights under HIPAA to share information with outside parties without a current [Release of Information].

Thompson contends that the middle sentence of the second section—"*Furthermore a CPS referral was made without all details known to Ms. Thompson.*"—establishes in Scott & White's own words that, even if it terminated her because of her disclosure to the school

9

nurse, it *also* terminated her because she reported her concerns to CPS. According to Thompson, the form's reference to the CPS referral establishes that Scott & White terminated her for *both* reasons and thus creates a fact issue as to whether the CPS referral was a but-for cause of her termination.

This argument, however, addresses only half of the but-for causation standard. It is true that, under that standard, Thompson need not prove that her report to CPS was the "sole" reason for her termination, and the fact that Scott & White also terminated her for an additional reason would not prevent her from establishing the necessary causation. *See Hinds*, 904 S.W.2d at 631. But the causation standard's second half requires her to prove that the additional reason, standing alone, was insufficient to cause Scott & White to fire her when it did. As we explained in *Hinds*, "the report need not be the employer's sole motivation, but it must be such that without it the discriminatory conduct would not have occurred when it did." *Id.*

Here, the Employee Counseling Form itself establishes that Scott & White would have terminated Thompson for disclosing information to the school nurse regardless of whether she made the report to CPS. The first section makes this clear, stating that Thompson's "inappropriate[]" contact with the school nurse was "a violation of HIPAA and patients['] rights" and "[a]*s a result of this violation* [Thompson's] employment is being terminated immediately." [Emphasis added.] And the second section confirms this, repeating that Thompson "contacted a school nurse without a [Release of Information]" and explaining that "[i]t is a violation of a patient's rights under HIPAA

to share information with outside parties without a [Release of Information]." These statements establish that Thompson was fired "as a result" of her disclosures to the school nurse, despite the additional reference to her CPS referral.

Beyond the Employee Counseling Form, additional evidence further establishes that Scott & White would have fired Thompson when it did because of her contact with the school nurse. The second written reprimand only seven months earlier warned Thompson that a third violation "will" result in termination, and Thompson conceded in her deposition testimony that she was aware of that warning. Indeed, she testified that she believed a hospital administrator "wanted [her] terminated" and was looking for a reason to find a third violation because of an altercation they had in 2015, long before she called the school nurse or made the report to CPS. And when asked why hospital employees would be motivated to retaliate against her for making the CPS report, she testified, "I don't think they were."

We conclude the evidence establishes that Thompson's contact with the school nurse motivated Scott & White to terminate her employment when it did. Thompson offers no evidence to dispute that conclusion. Instead, she contends that the evidence establishes that Scott & White *also* terminated her because she made the CPS report. But that evidence does not contradict the evidence that Scott & White would have terminated her when it did because of her contact with the school nurse. Without evidence that she would not have been terminated when she was "but for" the CPS report, she cannot establish a violation of Section 261.110. *See Apache*, 627 S.W.3d at 338 ("Because Apache and

11

Davis agree that unapproved overtime was an undisputed basis for her termination, there could be no evidence that she would not have been terminated but for her email."); *Cont'l Coffee*, 937 S.W.2d at 451 ("If an employee's termination is required by the uniform enforcement of a reasonable . . . policy, then it cannot be the case that termination would not have occurred when it did but for the employee's [protected conduct]."). As a result, Thompson has produced no evidence to create an issue on causation in her claim for retaliation under Family Code Section 261.110, and summary judgment in favor of Scott & White was proper.

## IV.
## Conclusion

While the amount of evidence needed to survive a claim for summary judgment is certainly lower than that needed to ultimately prevail on a claim for retaliation, the claimant must nevertheless produce evidence sufficient to create a fact issue. Scott & White's evidence conclusively established that it would have terminated Thompson's employment when it did because of her disclosures to the school nurse and thus conclusively negated the causation element of Thompson's claim under Section 261.110. We therefore reverse the court of appeals' judgment and render judgment reinstating the trial court's order granting summary judgment in favor of Scott & White.

Jeffrey S. Boyd
Justice

**OPINION DELIVERED:** December 22, 2023

12